**Gary L. GRAF, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 03–95–00531–CR.

Court of Appeals of Texas,
Austin.

June 19, 1996.

Rehearing Overruled Aug. 14, 1996.

David Minton, Minton, Burton, Foster & Collins, Austin, for Appellant.

Ken Oden, County Atty., Shannon Todd Edmonds, Asst. County Atty., Austin, for State.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Appellant Gary L. Graf was convicted of the misdemeanor offense of driving while intoxicated after being stopped by a Texas Department of Public Safety ("DPS") officer assigned to the Capitol District. Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1574 (Tex.Rev.Civ.Stat. Ann. art. 6701*l*–1(b), since repealed and codi-

fied at Tex. Penal Code Ann. § 49.04). Graf filed a motion to suppress evidence on the ground that the DPS officer was without jurisdiction to make the original traffic stop. The trial court held that the officer had jurisdiction and denied Graf's motion to suppress. Graf now appeals his conviction on the basis of that ruling. Because Graf has failed to demonstrate that DPS officers assigned to the Capitol District lack statewide jurisdiction, we will affirm the judgment of the trial court.

## THE CONTROVERSY

On the morning of August 2, 1994, Officer Bruce Dalme, a Department of Public Safety officer assigned to the Capitol District, was on routine patrol at the intersection of Trinity and Tenth Streets in downtown Austin when he observed a green BMW driven by Graf heading westbound on Tenth Street. Officer Dalme observed the vehicle run through a red light at the intersection of Tenth and Brazos Streets. After driving up behind Graf, Officer Dalme activated his overhead lights, and Graf eventually stopped on Tenth Street between Colorado and Lavaca Streets.

As Officer Dalme conversed with Graf, he smelled an odor of alcohol and asked Graf if he would be willing to perform some field sobriety tests. After those tests, Officer Dalme arrested Graf for the offense of driving while intoxicated. Graf filed a motion to suppress the evidence obtained as a result of the stop, asserting that Officer Dalme made the traffic stop without jurisdiction because it occurred outside the boundaries of the Capitol Complex. Graf claimed that any evidence obtained as a result of the stop was unlawfully obtained and therefore inadmissible. *See* Tex.Code Crim. Proc. Ann. art. 38.23 (West Supp.1996); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

At the pretrial hearing on Graf's motion to suppress, Officer Dalme testified that he was employed by the DPS and was assigned to the Capitol District at the time he detained Graf. Dalme further testified that he attended the DPS training academy, where he received the training necessary for a basic peace officer's license. Dalme testified that the DPS training he received was similar to, but less extensive than, the training given to DPS highway-patrol troopers.

The trial court overruled Graf's motion to suppress evidence and denied in part his motion to suppress oral statements. The court held that the Capitol Complex, as defined in section 411.061 of the Government Code, includes the streets bordering the Complex. *See* Tex. Gov't Code Ann. § 411.061 (West Supp.1996). Because Officer Dalme stopped Graf on Tenth Street—a street comprising one border of the Capitol Complex—the court held that he had jurisdiction to make the stop. Accordingly, the trial court did not address the question whether DPS officers assigned to the Capitol District have the statewide jurisdiction accorded to other DPS law-enforcement officers. Graf pleaded no contest to the charge and now appeals the ruling of the trial court on the motions to suppress. In two points of error, Graf argues that the stop was illegal because the statutory definition of the Capitol Complex excludes the streets that constitute its border and because Officer Dalme did not have statewide jurisdiction.

## DISCUSSION

Officers commissioned by the DPS are licensed peace officers. Tex.Code Crim. Proc. Ann. art. 2.12(4) (West Supp.1996). It is the duty of peace officers to preserve the peace within their jurisdiction. Tex.Code Crim. Proc. Ann. art. 2.13 (West 1977). To carry out this duty, peace officers are authorized to arrest without a warrant any person committing an offense within their presence or view. *Id.* art. 14.01(b); Tex. Transp. Code Ann. § 543.001 (West 1996). This authority, however, may be limited by statute or common law defining the territorial jurisdiction of a peace officer. *Angel v. State*, 740 S.W.2d 727, 732 (Tex.Crim.App.1987) (*citing Preston v. State*, 700 S.W.2d 227 (Tex.Crim.App.1985)) ("Following our reasoning in *Preston*, the legislative expression of a peace officer's jurisdiction must be found in some other statute or be controlled by common law."); *see* Tex.Code Crim. Proc. Ann. art. 2.13 (West 1977) ("It is the duty of every peace officer to preserve the peace

*within his jurisdiction.*") (emphasis added). Accordingly, to determine the territorial jurisdiction of DPS officers assigned to the Capitol District Police, we must analyze the statutes governing these issues.

■ The DPS enabling statutes are located in Chapter 411 of the Texas Government Code. The DPS is an "agency of the state" charged with the responsibility to "enforce the laws protecting the public safety and provide for the prevention and detection of crime." Tex. Gov't Code Ann. § 411.002 (West 1990). To this end, Texas Rangers and Texas Highway Patrol Troopers have jurisdiction to make arrests in any county of the state. *Id.* §§ 411.022, 411.032; *see also Allen v. State,* 419 S.W.2d 852, 853 (Tex. Crim.App.1967). Although the Rangers and Troopers are the only DPS law enforcement personnel specifically mentioned, the Government Code authorizes the Public Safety Commission to create other divisions if deemed necessary to carry out the duties of the Department. Tex. Gov't Code Ann. § 411.002(a) (West 1990).

In 1991, the Legislature transferred all the duties and responsibilities of the former Capitol Security Police Division from the State Purchasing and General Services Commission to the DPS. Act of August 25, 1991, 72d Leg., 1st C.S., ch. 8, § 2.13, 1991 Tex. Gen. Laws 137, 143 (Tex.Rev.Civ.Stat.Ann. art. 601b, § 4.12(g)(1), since repealed) (hereinafter "Former article 601b").[1] To help effectuate this transfer of responsibility, the Legislature in 1993 added Subchapter E to Chapter 411 of the Government Code defining the geographical boundaries of the Capitol Complex, prescribing certain parking and traffic rules on the grounds, and conferring authority on the DPS to adopt other regulations governing the security of the grounds. Tex. Gov't Code Ann. §§ 411.061–.065 (West Supp.1996). The 1993 amendments explicitly charge the DPS with "primary responsibility for law enforcement and security services on the Capitol Complex." *Id.* § 411.062(a).

Graf asserts that officers working within the Capitol District do not have the same statewide territorial jurisdiction conferred on DPS officers generally. However, the language of the statute suggests otherwise. Nowhere does the statute *limit* the territorial jurisdiction of DPS officers assigned to the Capitol District to the geographical boundaries of the Capitol Complex. The statute simply delineates the geographical area in which Capitol District officers will perform their duties; it does not speak in jurisdictional terms. On the contrary, the statute refers to the DPS as an "agency of the *state* " with a statewide charge of responsibility to enforce public safety laws. *Id.* § 411.002(a) (emphasis added). Similarly, Graf is unable to cite any administrative regulations limiting the jurisdiction of DPS officers assigned to the Capitol District. We see no reason why the same statewide territorial jurisdiction afforded to other law-enforcement officers within the DPS should not also apply to officers assigned to the Capitol District.

Graf argues that the following portion of the Government Code limits the jurisdiction of DPS officers assigned to the Capitol District to the geographical region of the Capitol Complex:

> (a) The department has primary responsibility for law enforcement and security services on the Capitol Complex.

*Id.* § 411.062(a).[2] We disagree because section 411.062 contains no *jurisdictional* lan-

---

1. Former article 601b stated specifically, "As of the effective date of this Act, all of the duties, functions, positions, responsibilities, inventory, property, and other items assigned to the Capitol Security Police Division of the State Purchasing and General Services Commission are transferred to the Texas Department of Public Safety." Former article 601b, § 4.12(g)(1). The statute further provided that "[t]he State Purchasing and General Services Commission shall provide office space for this operational unit to the Texas Department of Public Safety in the American Legion Building or other suitable facility accept-

able to the Texas Department of Public Safety." *Id.* § 4.12(g)(5).

2. Section 411.061 of the Government Code specifically defines the geographical contours of the Capitol Complex as follows:
   (a) In this subchapter, "Capitol Complex" means property that is:
   (1) located in Austin, Texas, in the area bounded on the north by Martin Luther King, Jr., Boulevard, on the east by Trinity Street, on the south by 10th Street, and on the west by Lavaca Street, and including the

guage. The statute merely designates the geographical area in which the Department of Public Safety is to exercise "primary responsibility" for law enforcement as opposed to, for instance, the Austin Police Department or Travis County Sheriff's Department.[3] *Id.* § 411.062(a). The fact that the DPS has such special responsibilities within this geographical region has no bearing on the jurisdictional authority of DPS officers generally or of those specifically assigned to work in that region.

Graf nevertheless argues that Capitol District officers should be limited in their territorial jurisdiction in the same way that campus police officers and airport security personnel are limited in their jurisdiction. *See Preston v. State,* 700 S.W.2d 227, 229–30 (Tex.Crim.App.1985) (commissioned campus peace officer has no authority to make warrantless arrest for traffic offense committed off campus of university that issued him his commission); *Perkins v. State,* 812 S.W.2d 326, 329 (Tex.Crim.App.1991) (airport security personnel in Houston have no authority to conduct arrests for traffic offenses committed off property under control of city airports). However, the statutory grants of power to campus police and airport security personnel are vastly different from the statutory grant involved in the instant case. Both *Preston* and *Perkins* involved specially created peace officer forces operating pursuant to statutes and ordinances that explicitly limited the geographic scope of their jurisdiction.

In *Preston,* the Court of Criminal Appeals considered whether a campus peace officer commissioned by Lamar University had authority to enforce certain state traffic laws on passageways located off the university campus. The court referred to section 51.203 of the Education Code, which stated in part:

> The governing boards of each state institution of higher education may employ campus security personnel for the purpose of carrying out the provisions of this subchapter and may commission them as peace officers. Any officer commissioned under this section is vested with all the powers, privileges, and immunities of peace officers *while on the property under the control and jurisdiction of the institution of higher education or otherwise in the performance of his duties.*

Act of May 22, 1971, 62d Leg., R.S., ch. 1024, sec. 1, § 51.203, 1971 Tex. Gen. Laws 3072, 3089 (Tex. Educ.Code Ann. § 51.203, since amended) (emphasis added). The court determined that Lamar University campus officers were only vested with the authority of a peace officer while on property under the control or jurisdiction of Lamar University, or otherwise acting in performance of their official duties as a campus peace officer. *Preston,* 700 S.W.2d at 229–30. Accordingly, the arrest for a traffic offense a number of blocks from campus was made without lawful authority.[4]

Likewise, in *Perkins,* the Court of Criminal Appeals considered the legality of an arrest made by an airport police officer of the City of Houston on a street located off airport property. *Perkins,* 812 S.W.2d at 327. As in *Preston,* the Court referred to the statute authorizing creation of the airport police force, which provided in part:

> Any peace officer commissioned under this Act shall be vested with all the rights, privileges, obligations, and duties of any other peace officer in this state *while he is*

William P. Clements State Office Building located at 300 West 15th Street. The term shall also apply to other locations under the jurisdiction of the capitol police district as may be approved by the director; and

(2) owned by or under the control of the state.

*Id.* § 411.061.

**3.** DPS regulations support this interpretation: "The department of public safety recognizes that the basic responsibility for the enforcement of criminal laws rests with the local officers in their respective jurisdictions. It is the policy of the

department to cooperate with and assist local officers fully in these matters but to leave the basic responsibility to them unless specifically assigned to do otherwise." 37 Tex. Admin. Code § 1.11(c) (West 1995). Law enforcement within the Capitol Complex is one instance where the Legislature has specifically assigned the department "to do otherwise."

**4.** The territorial jurisdiction of campus police officers has since been extended. *See State v. Backus,* 881 S.W.2d 591, 592 (Tex.App.—Austin 1994, pet. ref'd).

*on the property under the control of the airport, or in the actual course and scope of his employment.*

Act of May 31, 1975, 64th Leg., R.S., ch. 380, § 1, 1975 Tex. Gen. Laws 991, 991 (Tex.Rev. Civ.Stat.Ann. art. 46g(d), since repealed and codified at Tex. Transp. Code Ann. § 23.003). The court noted that the Houston ordinance appointing the airport police force contained provisions limiting the territorial jurisdiction of Houston airport police officers to the property under the control of the airport. *Perkins,* 812 S.W.2d at 329. Thus, the arrest at issue was deemed outside the officer's scope of employment and, therefore, unlawful.

Whereas *Preston* and *Perkins* involved statutes that explicitly carved out defined geographical regions within which particular peace officers had authority to operate, Chapter 411 makes no attempt to confine the jurisdiction of *any* DPS officer to a particular region. Presumptively, DPS officers assigned to the Capitol District have the same statewide jurisdiction afforded other DPS law enforcement officers. Aside from the total absence of any language in the statute limiting the jurisdiction of Capitol District DPS officers, the evidence in the record suggests the Capitol District may be no more than a special geographic subdivision of the Texas Highway Patrol whose officers are charged with added law enforcement responsibilities in addition to the duties charged to

regular Highway Patrol Troopers.[5] Officer Dalme's testimony, for instance, suggests that DPS officers working with the Capitol District may be assigned elsewhere at the Department's discretion. Officer Dalme testified concerning his employment as follows:

Q  How are you employed?

A  I'm employed with the Texas Department of Public Safety, *assigned currently* with the Capitol District.

(Emphasis added). Officer Dalme's testimony that he was "assigned currently" with the Capitol District implies that Capitol District officers may be reassigned to other geographic locations, presumably in the same way a municipal police officer might be assigned to any number of precincts within a municipality. The fact that the DPS assigns an officer to a particular geographic area does not limit that officer's statewide jurisdiction any more than assignment of a municipal police officer to a particular precinct would limit that officer's city-wide jurisdiction.

In support of his argument, Graf cites Officer Dalme's testimony in the record that he had attended the DPS training academy and received the training necessary for a basic peace officer's license, but that such training was less extensive than that of a trooper.[6] Graf asserts that this testimony indicates Capitol District officers undergo different certification procedures than DPS

---

**5.** DPS regulations state: "The Texas Department of Public Safety has designated the former Capitol Security Police as the Capitol Police District and placed it under the Traffic Law Enforcement Division of the Texas Department of Public Safety." 37 Tex. Admin. Code § 4.1(c) (West 1995). This is the same division that houses the Texas Highway Patrol. The duties of officers within the Traffic Law Enforcement Division include:

Department of public safety traffic law enforcement officers, so far as practicable under the circumstances, will stop every violator of the traffic laws observed by them and take appropriate enforcement action against them.
. . . .
*All* traffic law enforcement officers of the department of public safety will cite or arrest, as appropriate, all violators of the traffic laws apprehended by them who are committing a clear-cut and substantial violation of the traffic laws unless major extenuating circumstances are present.

37 Tex. Admin. Code §§ 3.21(a), 3.23(a) (West 1995). Because DPS officers assigned to the Capitol District are officers under the Traffic Law Enforcement Division, they have the authority described above in addition to their primary law enforcement responsibilities within the boundaries of the Capitol Complex.

**6.** Q  All right, sir. Very briefly, what is your background in law enforcement?
A  I have an associates degree in criminal justice and was trained at the Texas Department of Public Safety training academy where I received my training for my TCLEOSE certificate for a basic peace officer's license and have since been employed with the Capitol District for approximately a little over a year.
Q  Are you—is that [the same] certification, for instance, as a DPS trooper receives?
A  No, sir. It's the same training basically. There was less training involved as to what a trooper would receive.

troopers, and therefore do not have statewide jurisdiction. However, the testimony indicates that Officer Dalme received "the same training basically," and the fact that certain troopers received some additional training may simply reflect the department's administrative foresight concerning the type of daily events normally facing DPS officers who primarily patrol rural highways as opposed to DPS officers who primarily enforce public safety laws in an urban area such as the Capitol Complex.[7] Such testimony, by itself, does not demonstrate that the Capitol District is a specially created police force within the DPS with limited territorial jurisdiction distinct from other DPS law enforcement units.

Based on the statutes at issue and the evidence in the record, we are unable to hold that DPS officers assigned to the Capitol District lack statewide jurisdiction. Accordingly, Graf's first point of error is overruled. Graf's second point of error asserting that the trial court erred in not granting the motions to suppress evidence because the evidence proffered by the State was obtained unlawfully is also overruled.

## CONCLUSION

Because Graf failed to demonstrate that DPS Officers assigned to the Capitol District lack statewide jurisdiction, we affirm the trial court's denial of the motion to suppress and subsequent judgment of conviction.

---

7. Department regulations set out the basic requirements for employment as a trooper. *See* 37 Tex. Admin. Code § 1.32 (West 1995). No separate section exists setting out different requirements for employment as a DPS officer within the Capitol District.