**James Jerald ZARYCHTA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00145–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 15, 2001.

Rehearing Overruled May 3, 2001.

---

Tom Moran, Houston, for appellants.

Gail Kikawa McConnell, Conroe, for appellees.

Panel consists of Senior Chief Justice MURPHY and Justices MAURICE E. AMIDEI and HUDSON.*

* Senior Chief Justice Murphy sitting by assignment.

## OPINION

HUDSON, Justice.

Appellant, James Jerald Zarychta, was convicted by a jury of the offense of capital murder committed in the course of a burglary of a habitation. The trial court sentenced appellant to life imprisonment. Thereafter, the First Court of Appeals reversed and remanded the cause for a new trial. *Zarychta v. State*, 961 S.W.2d 455 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd). On retrial, appellant was again convicted by a jury of capital murder and the trial court again sentenced appellant to life imprisonment. In five issues, appellant contends: (1) the trial court erred in overruling his motion to disqualify the Montgomery County District Attorney's Office; (2) the trial court erred in overruling his motion to suppress evidence; (3) the evidence was legally insufficient to prove the murder was committed during the commission of a burglary; (4) the trial court erred in overruling appellant's objection to a photo array; and (5) the trial court erred in failing to grant appellant credit for pre-trial confinement. We affirm.

On March 10, 1993, Mr. Jewel P. Madole arrived at his home in Montgomery County and, upon entering, inadvertently surprised two burglars—appellant and his fifteen-year-old brother, William Knoble. Knoble, armed with a 9mm handgun, confronted Madole. Madole fled from his home, but was pursued by Knoble. Knoble shot and killed the victim behind his residence. Madole was shot at least five times. One bullet perforated his right lung, another perforated both his large and small intestine, and three others entered his right buttocks and perforated his right columnary artery. Appellant and Knoble then fled the scene in appellant's red pick-up truck. A neighbor heard the gun shots and observed appellant's truck speed away from the scene.

The Montgomery County Sheriff's Department investigated the murder and quickly obtained a warrant for appellant's arrest. The day after the murder, a Houston patrol officer observed appellant driving a red pick-up truck in Harris County. Both the officer and appellant were pulling into the parking lot of a gas station. The officer exited his vehicle and approached appellant, who was also exiting his vehicle. The officer asked appellant to identify himself, appellant did, and the officer arrested him. According to the officer's testimony, a Montgomery County Sheriff's Deputy arrived on the scene within two minutes and took custody of appellant and his vehicle.

Appellant was then transported to the Montgomery County Jail. Appellant's vehicle was impounded by the Montgomery County Sheriff's Department. On March 11, 1993, appellant confessed his involvement in the crime. On March 12, 1993, appellant's brother also gave a complete confession. The Montgomery County Sheriff's Department obtained a warrant to search appellant's vehicle and discovered pawn tickets and a sales receipt for the purchase of 9mm ammunition. The receipt indicated the ammunition was purchased at 11:30 a.m. on the day of the murder. The Sheriff's Department lifted appellant's fingerprint from the receipt.

During his first trial, appellant was represented by Peter Speers. Sometime thereafter, however, Speers went to work for the Montgomery County District Attorney's Office. Because his former counsel was employed by the district attorney at the time of the second trial, appellant requested that the entire district attorney's office be disqualified from participating in the trial. The trial court overruled the motion. Thus, in his first issue, appel-

lant contends his rights under the Sixth Amendment of the United States Constitution and Article 1, section 10 of the Texas Constitution were violated when the trial court refused to disqualify the Montgomery County District Attorney's Office.

In criminal cases, lawyers "are necessities, not luxuries." *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Their presence is essential because they are the means through which every other right of the accused is secured. *United States v. Cronic*, 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Thus, legal counsel is an intimate and essential part of the machinery of justice. *In re Sawyer*, 360 U.S. 622, 668, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959) (Frankfurter, J., dissenting).

A lawyer cannot, however, be entirely effective without the trust of his client. To promote confidence between the accused and his attorney, our rules of professional conduct prohibit a lawyer from representing a person in a matter adverse to a former client if the matter is the same or substantially related to the subject of his former representation. Tex.Disciplinary R. Prof'l Conduct, 1.09(a)(3). Here, the parties agree that Speers, as appellant's former attorney, was precluded from participating in the prosecution; the parties disagree, however, as to whether the remainder of the Montgomery County District Attorney's Office should also be prohibited from participating in the case.

In the private arena, both a lawyer and his firm are precluded from representing a party against a former client in the same litigation. *Henderson v. Floyd*, 891 S.W.2d 252, 253–54 (Tex.1995). Moreover, the former client need not show that his former attorney has actually violated his confidence. It is enough simply to show that his former lawyer is now associated with his opponent's lawyer. *Id.* at 254. Having established that Speers was his former attorney in the same litigation, appellant contends we should apply the rule articulated in *Henderson* and exclude the entire district attorney's office.

Our Rules of Professional Conduct, however, provide a more flexible standard where a former attorney is employed by a government agency. The public policy promoting a less rigorous rule is set forth in a comment:

> [T]he rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards.

Tex. Disciplinary R. Prof'l Conduct, 1.10 cmt. 3. To protect the former client, however, the rule provides that a lawyer serving a government agency shall not "participate in a matter involving a private client when the lawyer [has previously] represented that client in the same matter while in private practice or nongovernmental employment." Tex. Disciplinary R. Prof'l Conduct, 1.10(e)(1). The rule does not explain how a lawyer should be "screened" from participation, but the comment contains practical suggestions:

> Although "screening" is not defined, the screening provisions contemplate that the screened lawyer has not furnished and will not furnish other lawyers with information relating to the matter, will not have access to the files pertaining to the matter, and will not participate in any way as a lawyer or adviser in the matter.

Tex. Disciplinary R. Prof'l Conduct, 1.10 cmt. 3.

■ Here, the record shows that while Speers did not directly participate in the case, neither did the district attorney's office construct formal barriers or implement procedures to "screen" him from the case. In fact, upon learning of a venue issue in the case, Speers went to the chief of the appellate division and delivered his opinion on the matter, i.e., appellant was entitled to his request for a retrial in Brazos County.

While Speers' opinion was consistent with appellant's position, the conversation should not have occurred. The law prefers, where possible, bright-line rules. To permit a discussion between former counsel and his new colleagues at the district attorney's office on any issue in the case, whether helpful or harmful to appellant's cause, blurs the line of demarcation between what is and is not permissible. Nevertheless, as an intermediate appellate court, we are bound by controlling authority from the Court of Criminal Appeals. We find the Court of Criminal Appeals has considered the issue presented here in a factually similar scenario and resolved it against appellant's position. *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1 (Tex. Crim.App.1990).

In *Eidson*, the defendant in a capital murder case was initially represented by a defense team that included Ross Adair. Adair, however, was forced to resign from the team when he was appointed to serve as the judge of a county court at law. Three months later, Adair resigned his bench and sought employment from the district attorney. Although the district attorney gave Adair explicit instructions neither to discuss the case, nor allow anyone to discuss it in his presence, Adair prepared a brief for the district attorney in response to the defendant's motion to disqualify the district attorney's office. Although the holding of the Court of Crimi-

nal Appeals must be synthesized from a plurality and concurring opinion, five members of the court agreed that a district attorney should not be disqualified absent a showing that: (1) a member of his office participated in the prosecution of a former client; and (2) that such participation resulted in a violation of the former client's due process rights. Although adverse to his former client, the court held that Adair's response to the motion to disqualify did not amount to his "participation" in the case because: (1) it involved legal issues only and required no disclosure of confidential facts and circumstances; and (2) it did not contribute to the prosecution, but only determined who might prosecute him. *Id.* at 3, n. 2.

We think the scenario presented here is less egregious than the one presented in *Eidson*. Unlike Adair, Speers did not advocate a position adverse to his former client. Further, his actions related to legal issues only and did not require disclosure of confidential facts and circumstances. Finally, his discussion of the venue issue did not contribute to the prosecution, but related only to where it should occur. Accordingly, appellant's first issue is overruled.

In his second issue, appellant asserts the trial court erred in overruling his motion to suppress evidence. Prior to trial, appellant requested the suppression of evidence discovered in his pick-up truck by the Montgomery County Sheriff's Department. He argues: (1) the vehicle was seized without legal authority; (2) it was transported to Montgomery County without authority; (3) there is no evidence to show the magistrate who issued the search warrant had legal authority to do so; and (4) the warrant authorized a search exceeding the scope authorized by probable cause as related in the supporting affidavit. Appellant also asked the court to suppress state-

ments made by him after he was placed in custody.

A trial court's decision on a motion to suppress is reviewed under an abuse of discretion standard. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). An appellate court should give almost total deference to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim. App.1997). An appellate court should also give the same amount of deference to the trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* An appellate court may review *de novo* "mixed questions of law and fact" not falling within this category. *Id.* If the trial court does not file findings of fact and conclusions of law, an appellate court presumes the trial court made findings necessary to support its ruling so long as those implied findings are supported by the record. *State v. Simmang,* 945 S.W.2d 219, 221–22 (Tex.App.—San Antonio 1997, no pet.).

Ordinarily, a peace officer may exercise his powers as a law enforcement officer only within the boundaries of his territorial jurisdiction. *Graf v. State,* 925 S.W.2d 740, 741 (Tex.App.—Austin 1996, pet ref'd). Here, appellant asserts that deputies of the Montgomery County Sheriff's Department had no authority to seize his motor vehicle in Harris County. However, where a police officer is outside his territorial jurisdiction, but is accompanied by an officer possessing jurisdiction, the actions of the "foreign" officer are considered to be lawful. *Lewis v. State,* 15 S.W.3d 250, 255 (Tex.App.—Texarkana

2000, no pet.); *Morris v. State,* 802 S.W.2d 19, 20 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). Here, the record shows a Houston Police Officer, who was within his territorial jurisdiction arrested appellant on the authority of a warrant. Within minutes, the officer was accompanied by deputies of the Montgomery County Sheriff's Office. Thus, if the facts and circumstances presented here would have authorized the Houston Police Officer to seize appellant's truck, then the Montgomery County deputies were likewise authorized to seize the truck.

Here, the truck was seized without a warrant, but not searched until after a warrant had been obtained from a magistrate. Different interests are implicated by a "seizure," as contrasted with a "search." *Segura v. United States,* 468 U.S. 796, 806, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). "A seizure affects only the person's possessory interests; a search affects a person's privacy interests." *Id.* Because of the less intrusive nature of a seizure, police who have probable cause to believe a vehicle contains evidence or contraband, are frequently permitted to seize a motor vehicle without a warrant to prevent the spoliation or loss of evidence until a warrant can be obtained. *Dismukes v. State,* 919 S.W.2d 887, 893 (Tex.App.— Beaumont 1996, no pet.). Here, the police had probable cause to believe appellant participated in a string of burglaries, including the burglary of the victim's home and his subsequent murder. Moreover, the vehicle in which he was arrested matched the description of the vehicle seen leaving the victim's home. Because the victim had been shot numerous times, police suspected that blood or gunpowder residue might have been inadvertently transferred to the killers' clothing to the interior of the truck. Further, the police could see "numerous items of clothing" and

"gym type bags" in the bed of the truck. They could also see a "steno type pad" in the cab of the truck that appeared to contain written addresses. In light of the facts and circumstances, we find the police had probable cause to believe evidence pertaining to the victim's murder would be found in the truck. Accordingly, the police were authorized to seize the truck without a warrant.

Appellant also contends, however, that the search performed pursuant to the warrant was unlawful because: (1) the State failed to show the magistrate who issued the warrant was authorized to issue warrants for mere evidence or even that he was legally authorized to act as a magistrate at all; and (2) the search exceeded the scope of the probable cause stated in the warrant.

A "search warrant" is a written order issued by a magistrate. TEX.CODE CRIM. PROC.ANN. art. 18.01(a) (Vernon Supp. 2000). The term "magistrate" includes the judges and justices of the various courts of this state. TEX.CODE CRIM.PROC.ANN. art. 2.09 (Vernon Supp.2000). However, not every magistrate is authorized to issue every search warrant. For example, an evidentiary search warrant, i.e., a warrant for property or items "constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense," can only be issued by "a judge of a municipal court of record or county court who is an attorney . . ., statutory county court, district court,

the Court of Criminal Appeals, or the Supreme Court." TEX.CODE CRIM.PROC.ANN. arts. 18.01(c) & 18.02(10) (Vernon Supp. 2000). In his written motion to suppress, appellant argued that the judge who issued the warrant was not authorized to do so.

■■■■■ The warrant appears to bears the signature of "E. Ernst"; below his signature is the printed notation: "Magistrate, Montgomery County, Texas," followed by the handwritten notation: "Sr. Judge." As an appellate court, we are entitled to take judicial notice of a proper fact even where the trial court was not requested to take judicial notice of the fact and the court made no announcement that it had taken such notice. *McDaniel v. Hale*, 893 S.W.2d 652, 673 (Tex.App.— Amarillo 1994, writ denied). For example, an appellate court may take judicial notice of whether an attorney is licensed in the State of Texas. *Hunnicutt v. State*, 531 S.W.2d 618, 623 (Tex.Crim.App.1976). Similarly, we take notice that Erwin G. Ernst is a senior district judge who is frequently assigned to sit on the district courts of Montgomery County.[1] However, whether Judge Ernst was properly assigned to sit as judge of a district court at the time he issued the warrant is not apparent from the record.

■■■■■ A defendant may challenge the authority of a judge without filing a quo warranto petition. *Wilson v. State*, 977 S.W.2d 379, 380 (Tex.Crim.App.1998).

---

1. Judge Ernst was licensed in 1950 and is currently is listed among the membership of the State Bar of Texas. His illustrious career can be traced through the last half-century of jurisprudence. A very small sample includes: *Green v. State*, 156 Tex.Crim. 22, 238 S.W.2d 775 (1951)(representing the appellant); *Carroll v. State*, 164 Tex.Crim. 511, 301 S.W.2d 108 (Tex.Crim.App.1957)(representing the State as an assistant district attorney in Harris County); *Roliard v. State*, 506 S.W.2d 904 (Tex.Crim.App.1974)(as an assistant district attorney in Walker County); *Moring v. State*, 591 S.W.2d 538, 539 (Tex.Crim.App.1979)(as district attorney in Walker County); *State Dept. of Highways & Public Transp. v. Elkins Lake Municipal Utility Dist.*, 593 S.W.2d 401 (Tex.App.—Houston [14th Dist.] 1980, no writ)(as district judge in Walker County); *Samuels v. Strain*, 11 S.W.3d 404 (Tex.App.— Houston [1st Dist.] 2000, no pet.)(sitting as judge of the 12th District Court).

However, in the absence of an objection, a presumption exists that the judge acted properly in the regular discharge of his duties. *Woods v. State*, 569 S.W.2d 901, 903 (Tex.Crim.App.1978). Here, appellant voiced an objection that the judge's authority to sign the warrant had not been established by the State. However, a naked objection such as the one advanced here does nothing to rebut the presumption of regularity. Without some evidence showing a judge's disqualification or lack of proper assignment, the State may rest on the presumption that the judge acted within his authority when he issued the warrant. When a defendant seeks to suppress evidence on the basis of an unlawful search or seizure, the burden of proof is initially on the defendant. *Chavarria v. State*, 876 S.W.2d 388, 391 (Tex.App.—El Paso 1994, no pet.). Thus, some evidence showing the disqualification or want of a proper assignment must be tendered to rebut the presumption that the judge acted in the regular discharge of his duties.[2]

■■■ Here, appellant objected prior to trial and asserted that Judge Ernst had no authority to issue the warrant in question; however, he offered no evidence on this issue in support of his motion to suppress. Moreover, evidence of an irregularity could have been easily obtained. Orders of assignment are issued by the presiding judge of the respective judicial region.

Tex.Gov't Code Ann. § 74.056 (Vernon 1998). If Judge Ernst was not assigned to a district court in Montgomery County at the time the warrant was signed, the Judge of the Second Administrative Judicial Region could have easily certified this fact. Accordingly, appellant's contention is not properly presented for review.

Appellant next asserts that the scope of the warrant exceeded the probable cause stated in the supporting affidavit. The warrant authorized police to search for blood, blood residue, gunpowder residue, and all clothing suspected of containing blood or gunpowder residue. The warrant also empowered officers to seize bullets, bullet casings, pawn tickets, .38 caliber or 9 mm firearms, and any records related to sale or possession of firearms or stolen property. Appellant seems to concede that the search for blood and gunpowder residue was properly supported by probable cause, but argues that a search of the ash tray and/or a purse in the vehicle was outside the scope of the warrant. Further, appellant contends that apart from blood and gunpowder residue, the supporting affidavit provides no probable cause to search for the other items listed in the warrant.

■■■ In Texas, the affidavit supporting the warrant must state probable cause, and its failure to do so is reviewable by an appellate court.[3] *Flores v. State*, 827

**2.** In a similar manner, a defendant challenging the propriety of police conduct must first produce evidence that defeats the presumption of proper police conduct. *State v. Simmang*, 945 S.W.2d 219, 220 n. 2 (Tex.App.—San Antonio 1997, no pet.); *Belton v. State*, 900 S.W.2d 886, 893 (Tex.App.—El Paso 1995, pet. ref'd).

**3.** The purpose of the exclusionary rule is to deter misconduct by the police. *See United States v. Leon*, 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Where officers reasonably rely upon the judgments of magis-

trates, there is little reason to believe that excluding evidence will cause officers in the future to behave in a manner that more effectively protects the rights of suspects. 40 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 4.86 (1995). Thus, where, as here, the police have relied upon a warrant, federal case law provides a "good faith" exception to the exclusionary rule. *Leon*, 468 U.S. at 922–25, 104 S.Ct. 3405.

In 1987, Article 38.23 of the Code of Criminal Procedure was amended to provide a similar exception under Texas law. Dix & Dawson,

S.W.2d 416, 418 (Tex.App.—Corpus Christi 1992, pet. ref'd). However, we find the affidavit recites sufficient facts to support a search for at least blood or gunpowder residue and any .38 caliber or 9 mm firearms. The affiant described the murder scene and noted that the victim had been shot numerous times. The affidavit relates how appellant admitted that he and his brother had ransacked the victim's house; that the burglary was interrupted by the victim's arrival; and that the victim was literally chased down and executed. Appellant further told affiant that he and his brother fled from the scene in his pickup truck. He also led police to a home where the victim's property had been hidden. At this location, police were told by a witness that when appellant and his brother unloaded the property they were armed, namely, appellant was carrying a .38 caliber pistol and his brother had a 9mm pistol. The affiant further stated that in his experience as a police officer it was common in murder cases for the perpetrator to transfer blood and gunpowder residue by contact with other items.

■■■ While the scope of the search warrant is governed by its terms, the search may be as extensive as is reasonably required to locate items described in the warrant. *DeMoss v. State*, 12 S.W.3d 553, 558 (Tex.App.—San Antonio 1999, pet. ref'd). Thus, a warrant to search a vehicle will allow for the search of every part of the vehicle that might contain the object of the search. *Acosta v. State*, 752 S.W.2d 706, 709 (Tex.App.—Corpus Christi 1988, pet. ref'd). In the context of blood and gunpowder residue, we find the scope of the search was limited to those areas of the vehicle that appellant and his brother might have touched after the murder; the ashtray is certainly a place that might have been touched. Further, it is not unreasonable to believe appellant or his brother might have opened other containers or objects within the passenger compartment of the vehicle.

■■■ The "scope" of a warrant, however, refers not only to spatial restrictions, but also the items to be seized. Here, the police found within the truck a receipt for the sale of 9 mm ammunition like that used in the murder. The purchase date on the receipt was one day prior to the murder. Moreover, appellant was identified by the cashier as the person who made the purchase. This receipt, however, is not one of the items listed in the warrant.

■■■ It is well established that police may seize incriminating evidence found in "plain view" when executing a warrant. For the plain view exception to the warrant requirement to attach, two requirements must be met: (1) the officer must be in a proper position to view the item or

---

§ 4.86 at 181. However, in *Gordon v. State*, the Court of Criminal Appeals interpreted Article 38.23(b) as providing only a very limited good faith exception, namely, it is not enough for an officer to *believe* he was acting pursuant to a warrant based on probable cause; rather, the warrant must, *in fact*, be supported by probable cause. 801 S.W.2d 899, 912–13 (Tex.Crim.App.1990), *overruled on other grounds*, 815 S.W.2d 681, 685 (Tex. Crim.App.1991). Thus, the exception has only been utilized by the courts in a few instances. *See Dunn v. State*, 951 S.W.2d 478, 479 (Tex.Crim.App.1997) (applying the "good faith" exception where officers executed an unsigned "warrant"); *White v. State*, 989 S.W.2d 108, 110 (Tex.App.—San Antonio 1999, no pet.) ("good faith" exception permitted where officers relied on warrant that had been recalled); *Brent v. State*, 916 S.W.2d 34, 37 (Tex.App.—Houston [1st Dist.] 1995, no pet.) (utilizing the exception where the complaint supporting arrest warrant was not signed by the affiant); *Forcha v. State*, 894 S.W.2d 506, 510 (Tex.App.—Houston [1st Dist.] 1995, no pet.)(reliance upon an undated warrant).

lawfully be on the premises; and (2) the fact that the officer has discovered evidence must be immediately apparent. *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim.App.1991).[4] Here, the police were lawfully inside appellant's vehicle by virtue of the warrant when they discovered the receipt. They knew at the time of the search that the victim had been shot with .38 caliber or 9 mm ammunition. It was immediately apparent to the officers that a receipt for 9 mm ammunition, purchased the day of the murder, was corroborating evidence linking appellant to the murder.

Nevertheless, there is a split of authority regarding whether the "plain view" exception is available when unnamed items are seized during the execution of an "evidentiary search warrant" issued pursuant to Tex.Code Crim.Proc.Ann. art. 18.02(10) (Vernon Supp.2000). The Code provides that a warrant may be issued to search for and seize various items; the first nine provisions under Article 18.02 authorize the seizure of specific fruits, contraband, or instrumentalities of crime. A tenth provision permits a warrant to be issued to seize property or items constituting mere evidence tending to connect a person to the offense. However, only the specifically described property or items set forth in a search warrant issued under Subdivision (10) of Article 18.02 may be seized. Tex. Code Crim.Proc.Ann. art. 18.01(d) (Vernon Supp.2000). Thus, it might be reasonably concluded that the "plain view" exception is not available to police when executing an "evidentiary" search warrant under Article 18.02(10). *See Scoggan v. State*, 736 S.W.2d 239, 245 (Tex.App.—Corpus Christi 1987), *rev'd on other grounds*, 799 S.W.2d 679 (Tex.Crim.App.1990). *But see Bower v. State*, 769 S.W.2d 887, 906 (Tex.Crim.App.1989)(upholding seizure of evidence not specifically listed in a evidentiary warrant issued under Article 18 .02(10)).

▮▮▮▮ Here, the warrant seeks more than "mere evidence." While the warrant does authorize the search for items that could only be characterized as "evidence," it also authorizes the seizure of firearms believed to have been used in the murder.[5]

---

4. Officers may seize mere evidence when the objects discovered and seized are reasonably related to the offense under investigation and the discovery is made in the course of a good faith search conducted within the parameters of a valid search warrant. [citation omitted]. The scope of a search, during which "mere evidence" may be found, is restricted to the object of the search and the places in which there is probable cause to believe it may be found.
*Id.* at 307

5. Here, the warrant states probable cause to believe appellant was in possession of a handgun at the time of the murder. He was still in possession of the firearm when he unloaded the victim's property at a friend's house. However, when appellant was arrested, police did not find a weapon on his person. Because he could have hidden the gun in a variety of places, the issue arises as to whether police had probable cause to believe the weapon was in appellant's truck.

When the issue is whether there is probable cause to search a particular place for evidence of a crime, "probable cause" to search does not necessarily mean "more-probable-than-not." *See* 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.2(e), at 72–73 (1996). See, for example: *United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir.1977) (holding that evidence in an affidavit indicating that materials subject to seizure are in the premises where the officers propose to search, is not always necessary—it is sufficient that the place is one where such materials would normally be expected to be hidden); *Iverson v. North Dakota*, 480 F.2d 414, 418 (8th Cir.1973) (where suspect admitted he had been in murder victim's apartment shortly before her death and he was observed to have scratches on his hands, arms, and neck, there was probable cause to search suspect's car and apartment for blood stained clothing on the theory that he would probably leave such evidence in one location or the other); *State v. Ward*, 350 Md. 372, 712 A.2d

*See* TEX.CODE CRIM.PROC.ANN. art. 18.02(9) (Vernon Supp.2000)(authorizing the seizure of implements or instruments used in the commission of a crime). Accordingly, the warrant presented here is not an "evidentiary search warrant." Thus, the proscription found in Article 18.01(d) does not apply. *State v. Young*, 8 S.W.3d 695, 698–99 (Tex.App.—Fort Worth 1999, no pet.) (holding that where a warrant authorizes search for both evidence and a firearm, the warrant is not an "evidentiary" warrant under Art. 18.02(10)). Appellant's contentions regarding the scope and propriety of the search are overruled.[6]

Appellant also argues that he was unlawfully transported to and detained in Montgomery County. He further contends that statements made by him while he was in custody in Montgomery County were the tainted fruits of that illegal detention. Article 15.17 of the Code of Criminal Procedure provides that the arresting officer must "without unnecessary delay," take the arrested person "before some magistrate of the county where the accused was arrested" for the purpose of receiving legal admonitions and, if appropriate, the taking of bail. TEX.CODE CRIM. PROC.ANN. art. 15.17 (Vernon Supp .2000).

A similar provision in Article 15.18 provides:

> One arrested under a warrant issued in a county other than the one in which the person is arrested shall be taken before a magistrate of the county where the arrest takes place who shall take bail, if allowed by law, and immediately transmit the bond taken to the court having jurisdiction of the offense.

TEX.CODE CRIM.PROC.ANN. Art. 15.18 (Vernon 1977).

It is undisputed that appellant was arrested in Harris County and immediately transported from his place of arrest to the Montgomery County Jail. However, the statutes describing the procedures for taking an alleged offender before a magistrate are conflicting. Where an arrest is made pursuant to a warrant, Article 14.06 of the Code of Criminal Procedure provides that "the person making the arrest shall take the person arrested ... without unnecessary delay before the magistrate who may have ordered the arrest." TEX.CODE CRIM. PROC.ANN. art. 14.06(a) (Vernon Supp. 2000). Thus, where the warrant is issued by a magistrate in Montgomery County, but the accused is subsequently arrested

---

534, 542 (1998)("In the case before us we are informed by the affidavit that Ward was operating his car within forty-eight hours after the murder. Obviously, Ward was not hiding out at home. Inasmuch as his handgun could be considered an item of continuing utility and value to him, the warrant-issuing judge reasonably could have inferred that Ward might be moving the gun and ammunition between his residence and his vehicle, so that there was probable cause to believe that evidence of the crime could be found in Ward's vehicle.") For a more extensive list of authorities, *see* LAFAVE at 73–74, n. 211. "To the extent such rulings permit searches to be made upon something less than a 50% probability as to any one particular place, they do not appear objectionable. The fact remains that it is unlikely that the privacy of an innocent person will be disturbed under such circumstances." *Id.*, at 373–74, 712 A.2d 534.

Under the facts and circumstances presented here, we find the warrant properly authorized police to search appellant's truck for .38 caliber and 9 mm firearms.

6. We note in passing that the officers could have chosen to conduct a warrantless search under the well-established "automobile exception." *See Powell v. State*, 898 S.W.2d 821, 827 (Tex.Crim.App.1994). Moreover, an invalid search warrant does not preclude inquiry into whether or not the search could have been upheld under a warrant exception. *Id.* The automobile exception allows an officer to conduct a warrantless search of a motor vehicle if the officer has probable cause to believe the vehicle contains evidence of a crime. *Id.*

in Harris County, the statute requires that the accused be transported to Montgomery County "without unnecessary delay." *Id.* Moreover, both Article 14.06 and 15.17 provide that where it is more "expeditious" to have the person admonished by a magistrate in a bordering county, he may be transported from the county of his arrest to a neighboring county "without unnecessary delay." In contrast, Article 15.18 requires that the accused be taken before a magistrate in the county where he is arrested.

■ However, we need not decide which of the aforementioned statutes was controlling here. It is well established that a suspect's statement is not inadmissible *per se* because he was not first admonished by a magistrate. Absent some causal connection between the officer's failure to take the suspect before a magistrate and his subsequent confession, the statement is admissible against him. *Cantu v. State,* 842 S.W.2d 667, 680 (Tex.Crim.App. 1992). Here, it is undisputed that appellant was given his *Miranda* warnings before being transported to Montgomery County. Moreover, appellant was again given his *Miranda* warnings prior to making his statement to police. There is some evidence in the record that appellant was eventually taken before a Montgomery County magistrate. Even if we assume the delay in taking appellant before a magistrate was unreasonable, such delay will not invalidate an otherwise voluntary statement if appellant was given his *Miranda* warnings prior to giving his statement. *Id.* The record contains no evidence establishing a causal connection between the State's violation of article 15.18 and his incriminating statement, and appellant was properly given his *Miranda* warnings on two occasions prior to his confession. Thus, appellant's contentions regarding the admissibility of his confession are without merit, and his second issue is overruled.

■ In his third issue, appellant contends the evidence is legally insufficient to establish that the murder was committed during a burglary. Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *Jackson v. Virginia,* 443 U.S. 307, 315–16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at 320, 99 S.Ct. 2781; *Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App.1993). The evidence is examined in the light most favorable to the jury's verdict. *Jackson,* 443 U.S. at 320, 99 S.Ct. 2781; *Johnson,* 871 S.W.2d at 186.

■ Appellant contends that the offense of burglary is complete once the burglar enters the building. Accordingly, appellant avers that he could not be guilty of capital murder because the necessary underlying offense, burglary, had ended when the victim was murdered. We find appellant's contention to be specious. Appellant's own statement establishes that he and his brother were inside the residence when the victim walked into his house, turned around, and fled across his backyard into the neighboring woods. Although the victim posed no threat to appellant and his brother, he was chased down and shot to death while begging for his life. It would be absurd for this court to hold that appellant was not guilty of capital murder simply because the victim had fled outside his residence before being killed.

■ Furthermore, the burglary statute in effect at the time of the murder

provides that the offense of burglary is a first degree felony where:

> (d) An offense under this section is a felony of the first degree if:
>
> > (1) the premises are a habitation; or
> >
> > (2) any party to the offense is armed with explosives or a deadly weapon; or
> >
> > (3) any party to the offense injures or attempts to injure anyone in effecting entry or while in the building or *in immediate flight from the building.*

Act of May 24, 1973, 63d Leg., R.S., ch. 399, sec. 1, § 30.02, 1973 Tex.Gen.Laws 883, 926 (amended 1993, 1995, 1999) (current version at Tex.Pen.Code Ann. § 30.02 (Vernon Supp.2000))(Emphasis added). When interpreting statutes, we are required to seek to effectuate the "collective" intent or purpose of the legislators who enacted the legislation. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). Clearly, a literal interpretation of the statute evinces the Legislature's intent to recognize that the offense of burglary continues through the immediate flight from the burglarized habitation or building. Appellant's third issue is overruled.

In his fourth issue appellant contends that the trial court erred in overruling appellant's objection to State's Exhibit No. 48, a photo array. Appellant argues that the photo array, shown to a witness by the Montgomery County Sheriff's Department, was so suggestive it violated appellant's Fourteenth Amendment right to due process. Appellant asserts that the pre-trial identification procedure was overly suggestive because he was the only Caucasian male in a photo array that contained five Hispanics and one Caucasian. Moreover, in his photograph, appellant held a different booking placard than the ones held by the other individuals. Appellant also argues that the witness's in-court identification was tainted by the improper photo array.

A pretrial identification procedure may be so unnecessarily suggestive and conducive to mistaken identification that to use that identification at trial would deny the accused due process of law. *Webb v. State,* 760 S.W.2d 263, 269 (Tex. Crim.App.1988) (citing *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)). However, there is no standard as to the similarities required of the subjects used in a pre-trial identification procedure, only that there not be a likelihood of irreparable misidentification. *Wilson v. State,* 15 S.W.3d 544 (Tex.App.— Dallas 1999, pet. ref'd). The State must strive to construct photo arrays containing persons of the same general appearance, but due process does not require the State to construct photo arrays containing persons who match in every feature. *Mungia v. State,* 911 S.W.2d 164, 168 (Tex.App.— Corpus Christi 1995, no pet.). The photo array contains photographs of six men with varying degrees of dark hair and dark complexions. Furthermore, the officer who prepared the photo array testified at trial that appellant's appearance led him to believe that appellant was Hispanic, and that he prepared the photo array accordingly. After examining the photo spread, we find the challenged pretrial identification was not impermissibly suggestive and did not violate appellant's Fourteenth Amendment right to due process. The first issue contained in appellant's fourth issue is overruled. Accordingly, appellant's complaint that the in-court identification was tainted by the "improper" photo array is also overruled. Appellant's fourth issue is overruled.

In his final issue, appellant complains the judgment does not reflect the proper amount of jail time which should be credit-

ed against his sentence. In other words, the judgment reflects that appellant was given no credit for pretrial incarceration on his sentence. The appellant's complaint is now moot because the trial court reformed the judgment to reflect the 2090 days of jail time credit due appellant. Accordingly, we overrule appellant's fifth issue.

The judgment of the trial court is affirmed.