*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

## OPINION

No. 04-09-00237-CR

Victorino Camargo **GUTIERREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Bexar County, Texas
Trial Court No. 920451
Honorable Brenda Chapman, Judge Presiding[1]

Opinion by:    Karen Angelini, Justice
Dissenting opinion by: Steven C. Hilbig, Justice

Sitting:       Karen Angelini, Justice
               Sandee Bryan Marion, Justice
               Steven C. Hilbig, Justice

Delivered and Filed: July 14, 2010

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Victorino Camargo Gutierrez was convicted of driving while intoxicated and was sentenced

to four months in jail and a $1,500.00 fine. Gutierrez appeals the judgment, arguing the trial court

erred by (1) failing to grant his motion to suppress; (2) admitting testimony concerning the speed of

his vehicle; (3) failing to make findings of facts and conclusions of law regarding the motion to

---

[1] Former judge, sitting by assignment

suppress; (4) failing to include an article 38.23 instruction in the jury charge, and (5) failing to order a presentence report. Because we hold that the trial court committed harmful error in failing to order a presentence report, we reverse the trial court's judgment as to punishment and remand the cause for a new punishment hearing. In all other respects, we affirm.

### BACKGROUND

Gutierrez was stopped by San Antonio Police Department Officer Curtis Lewis in the early morning hours on March 31, 2005. Officer Lewis subsequently arrested Gutierrez for driving while intoxicated, and the State filed formal charges. Before trial, Gutierrez filed a motion to suppress, asserting his detention and arrest were unlawful. On July 18, 2007, a hearing was held on the motion before the Honorable Olin Strauss, a senior judge sitting by assignment. Judge Strauss denied the motion, and a week later, Gutierrez filed a request for finding of facts and conclusion of law. However, at the time the case was called for trial on March 31, 2009, no findings of fact had been filed.

At trial, Officer Lewis testified he was on patrol on March 31, 2005, in a vehicle equipped with a radar unit. He testified that when he came on duty, he performed a "self-test" on the radar unit. According to Officer Lewis, at about 2:00 a.m., he saw a car approaching him from the opposite direction that appeared to be traveling faster than the posted speed limit of forty miles per hour. Officer Lewis used the radar unit to confirm that the vehicle's speed was fifty-three miles per hour. After the car passed him, Officer Lewis turned his vehicle around, caught up to the car, and drove behind it. Officer Lewis testified that after watching the vehicle drift back and forth across the lane markers several times, he decided to initiate a traffic stop. But, when Officer Lewis turned on his

emergency lights, the other driver's response was to increase his speed. Officer Lewis then activated his siren, and the car pulled over and stopped.

Officer Lewis identified Gutierrez as the driver of the car. He told the jury that Gutierrez had difficulty getting his driver's license out of his wallet, and had a moderate odor of alcohol, slurred speech, and red bloodshot eyes. According to Officer Lewis, Gutierrez's clothes were also somewhat disorderly. During his conversation with Officer Lewis, Gutierrez admitted to having consumed eight beers. Officer Lewis then administered several field sobriety tests to Gutierrez, including a horizontal gaze nystagmus test, a "walk and turn" test, and a balance test. Officer Lewis testified that Gutierrez exhibited several signs of intoxication during these tests; thus, he arrested Gutierrez for driving while intoxicated.

At the conclusion of the State's evidence, Gutierrez moved for a directed verdict and asked the trial court to suppress the evidence derived from the traffic stop:

> Defense: And based on those things, Judge, the State has failed in [its] case and we would ask the Court to grant our motion [for directed verdict]. And if the Court does not, we could ask the Court to rule that the State did not have reasonable suspicion for the stop; then the stop being illegal, then no evidence that was obtained afterwards can be used by the State. And we respectfully request the Court to grant our motions.

The trial court denied both motions, stating:

> Court: Motion for instructed verdict is denied. And I find that there is some testimony in evidence in the record to support the reasonable suspicion for the stop, so the motion to suppress is denied as well.

At the close of the evidence, Gutierrez requested the jury be instructed in the charge that pursuant to article 38.23 of the Texas Code of Criminal Procedure, it must disregard illegally obtained evidence. The trial court denied the request, and the jury returned a guilty verdict.

Before the punishment phase of the trial began, Gutierrez asked the court to order a presentence report. The trial judge , a former judge sitting by assignment, stated she wanted to hear testimony before deciding if a presentence report was necessary. The punishment hearing was scheduled for the following day. The next day, Gutierrez announced he was not ready to proceed and renewed his request for a presentence report:

> Defense: We're not ready, Judge. As I had indicated to you yesterday, I had requested a presentence report.
>
> Court: I understand, but I want to go ahead and take the evidence today while I'm here –
>
> Defense: Okay.
>
> Court: – because I'm not sure when I'll be back. So let's take the evidence and determine whether or not I still think we still need a PSI.
>
> Defense: All right.

Gutierrez testified about his family history, his finances, and his health. He also answered questions posed by the court and was cross-examined by the State as to several prior convictions for driving while intoxicated. The trial court asked both sides for their recommendations as to the proper sentence, and both recommended probation. The trial court then took a short break and imposed the sentence. Gutierrez did not make a further request for a presentence report or move for a continuance before the pronouncement of sentence.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Gutierrez contends the trial court erred in failing to make findings of fact and conclusions of law relating to the denial of the motion to suppress. *See Cullen v. State*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (holding trial judge must make findings of fact and conclusions of law

regarding ruling on motion to suppress when requested). Although Gutierrez filed a request for findings after the pretrial hearing, he did not request any findings of fact and conclusions of law after the court ruled on the motion during trial.

A motion to suppress is nothing more that a specialized form of an objection. *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.—San Antonio 1990, no pet.). If a trial court rules on a motion to suppress at a pretrial hearing, the court may reconsider the ruling at trial. *Montalvo v. State*, 846 S.W.2d 133, 138 (Tex. App.—Austin 1993, no pet.). Here, the operative ruling for purposes of appeal is the court's denial of the motion to suppress during trial. Gutierrez cross-examined Officer Lewis extensively at trial regarding the testing and accuracy of the radar unit, his ability to determine the actual speed of Gutierrez's vehicle, the movement of the vehicle over the marked lane dividers, and whether such movement constituted a traffic offense. This questioning, and Gutierrez's express request for a ruling on the motion to suppress during trial, affirmatively demonstrate Gutierrez fully intended to relitigate the suppression issue at trial. Therefore, the ruling on the motion to suppress during trial, and not the pretrial ruling, controlled the admission of the contested evidence. The pretrial ruling on the motion to suppress thus became irrelevant, as would be any findings made to explain that ruling. Because Gutierrez did not ask for findings of fact and conclusions of law from the trial court after its ruling during trial, the court was under no obligation to provide them. We overrule the point of error regarding the failure to make findings of fact and conclusions of law.

## MOTION TO SUPPRESS

Gutierrez asserts Officer Lewis had neither reasonable suspicion for the stop nor probable cause for a warrantless arrest. We review the trial court's ruling on a motion to suppress under an

abuse of discretion standard. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We view the record in the light most favorable to the trial court's ruling and will reverse only if the ruling is outside the zone of reasonable disagreement. *Id*. We give almost total deference to the trial court's determination of historical facts, especially those based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo the trial court's application of the law of search and seizure to the facts. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). When the trial court has not made findings of fact, we imply findings that support the court's ruling, so long as the findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000). We will sustain the trial court's ruling "if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *Dixon*, 206 S.W.3d at 590.

An officer must possess reasonable suspicion to initiate an investigative stop. *Davis v. State*, 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "Under this standard, the articulable facts on which the officer relied need only support a reasonable belief that activity out of the ordinary is occurring or has occurred, that the detainee is connected to the unusual activity, and that the unusual activity is related to crime." *State v. Garcia*, 25 S.W.3d 908, 912 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In determining whether there was reasonable suspicion for the stop, we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492-93.

"'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). When analyzing whether facts are sufficient to equal probable cause, we should use a "common-sense" approach and view the facts "as understood by those versed in the field of law enforcement." *Texas v. Brown*, 460 U.S. 730, 742 (1983).

Gutierrez argues that there was no reasonable suspicion for the traffic stop because his weaving slightly across his lane did not constitute a traffic offense and the officer testified he had not checked the radar unit to determine its accuracy. Officer Lewis testified his radar unit indicated Gutierrez was operating his vehicle at fifty-three miles per hour in an area posted at forty miles per hour. The officer had performed a "self-test" on the radar equipment, and he testified the test indicated the equipment was operating correctly. Gutierrez challenges the State's reliance on the radar reading because on voir dire examination Officer Lewis stated he had been trained to use a tuning fork to determine the accuracy of a radar unit, and the officer admitted he did not use a tuning fork on the radar unit. However, San Antonio Police Department Officer Michael Moore, who testified he was familiar with the type of radar equipment used by Officer Lewis, told the jury that using the "self-test" function on the unit is the proper method to determine the radar equipment was operating properly. Moreover, the radar reading merely confirmed Officer Lewis's initial observation that Gutierrez appeared to be traveling faster than the posted speed limit. This evidence is sufficient to support a finding that Officer Lewis had reasonable suspicion that Gutierrez was speeding.

In a separate point of error, Gutierrez asserts the trial court erred in permitting Officer Lewis to testify that the speed of his vehicle was fifty-three miles per hour, contending "the trial court simply took the officer's unschooled word as to how the buttons on the radar unit worked." However, Gutierrez did not object at trial to the reliability of the radar technology for measuring speed, or to either Officer Lewis's or Officer Moore's qualifications to testify about the unit. The evidence before the trial court was sufficient to support a finding of reasonable belief that Gutierrez was speeding. Further, the radar reading was only one part of the totality of the circumstances giving Officer Lewis reasonable suspicion that Gutierrez was committing a crime. The officer saw Gutierrez weave across and outside his lane several times, and observed Gutierrez increase his speed after the officer activated his emergency lights. Officer Lewis was required to use his siren to get Gutierrez to stop, which the officer testified he rarely needs to do. The trial court's finding of reasonable suspicion based on the totality of the circumstances, even when disregarding the testimony that the radar unit indicated Gutierrez was driving fifty-three miles per hour, is not outside the zone of reasonable disagreement.

Gutierrez also argues that there was no probable cause to support his warrantless arrest. We again disagree. Officer Lewis's observations of Gutierrez, including the results of the field sobriety tests, and Gutierrez's admission he had consumed eight beers, gave the officer probable cause to arrest Gutierrez for driving while intoxicated. The trial court did not abuse its discretion by denying the motion to suppress.

## ARTICLE 38.23 JURY INSTRUCTION

Gutierrez complains the trial court erred by not including in the jury charge an instruction under article 38.23 of the Texas Code of Criminal Procedure, which provides in part:

**Article 38.23 Evidence not to be used**

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). Gutierrez requested an instruction that would have allowed the jury to consider whether he was driving in excess of the posted speed limit or failed to maintain a single lane, and to disregard any evidence relating to the stop if the jury found Gutierrez did not commit, or had a reasonable doubt about whether he committed, the two traffic offenses. The trial court denied the requested instruction.

The trial court is required to submit a charge under article 38.23 only when there are disputed issues of fact material to a claim of illegal conduct. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). To be entitled to the instruction, a defendant must show: (1) the evidence raises an issue of fact; (2) there is evidence that affirmatively contests that fact; and (3) the contested fact is material to the issue of the legality of the challenged conduct. *Id*. at 510.

Although Gutierrez vigorously cross-examined Officer Lewis on whether the radar equipment was capable of accurately measuring the speed of his vehicle, Officer Lewis never wavered in his assertion that Gutierrez's vehicle appeared to be traveling above the posted speed limit when he first noticed the vehicle and that Gutierrez increased his speed after the officer activated his emergency lights. There was no affirmative testimony from any source that Gutierrez was not speeding. Because the evidence did not raise a fact issue on whether there was reasonable

suspicion that Gutierrez was speeding, Gutierrez failed to show he was entitled to the requested instruction. The point of error is overruled.

### PRESENTENCE REPORT

Gutierrez next argues that, despite his request, the trial court erred in failing to order a presentence investigation report before imposing sentence. Article 42.12, section 9, of the Texas Code of Criminal Procedure requires the court to order such a report in most cases, but excepts misdemeanor offenses if the defendant does not request a report and the judge agrees, or if "the judge finds that there is sufficient information in the record to permit the meaningful exercise of sentencing discretion and the judge explains this finding on the record." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9 (a), (b) (Vernon Supp. 2009). In this case, the court not only failed to order a presentence investigation report as requested, but it also failed to make a finding on the record that no presentence investigation report was necessary or explain why it was not necessary. Accordingly, the trial court erred by not ordering a presentence investigation report.

Because the error relates to a statutory requirement, it is non-constitutional error, and we will reverse the judgment only if the error affected Gutierrez's "substantial rights." *See Whitelaw v. State*, 29 S.W.3d 129, 134 (Tex. Crim. App. 2000); TEX. R. APP. P. 44.2(b). An error does not affect a person's substantial rights if, after reviewing the record as a whole, we determine the error had no or but a slight effect upon the outcome. *See Burns v. State*, 298 S.W.3d 697, 703 (Tex. App.—San Antonio 2009, pet. ref'd).

The statutory presentence report is prepared by a supervision officer and is required to include the circumstances of the offense, the amount of restitution due any victim, the defendant's criminal and social history, and a "proposed client supervision plan describing programs and

sanctions that the community supervision and corrections department would provide the defendant if the judge suspended the imposition of the sentence or granted deferred adjudication." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9(a) (Vernon Supp. 2009). Here, the trial judge was aware of the circumstances surrounding the offense because she presided over the jury trial. The trial judge was also aware of Gutierrez's criminal and social history because Gutierrez testified at the punishment hearing. Because there is no victim, restitution is not a factor in this case. However, because there was no presentence investigation report, the trial judge was not provided with the required "proposed client supervision plan." Without a "proposed client supervision plan" outlining the programs and sanctions available through the community supervision and corrections department to Gutierrez, the trial judge did not have before her all the information required by statute for her consideration before imposing sentence. If the judge believed there was "sufficient information in the record to permit the meaningful exercise of sentencing discretion," *see* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9(a), (b) (Vernon Supp. 2009), she could forego ordering a presentence investigative report; however, if she did so, the statute required her to explain this finding on the record. Because the statute requires the trial court to explain the finding on the record and the trial court did not, we cannot simply presume the trial judge knew what programs and sanctions would be made available to Gutierrez if she gave him community supervision. Nor can we presume the lack of such information did not affect the outcome. Therefore, we find the error harmful, and reverse and remand for a new sentencing hearing.

**CONCLUSION**

The trial court's judgment is reversed as to punishment, and the cause is remanded to the trial court for a new punishment hearing. In all other aspects the judgment is affirmed.


Karen Angelini, Justice

Publish