**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00689-CR**
_____

**STEVEN M. HAUSHERR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Montgomery County, Texas**
**Trial Cause No. 10-257853**

## OPINION

Steven M. Hausherr was convicted of the misdemeanor offense of driving while intoxicated. He claims the trial court erred in denying his motion to suppress evidence. The officer testified he observed traffic violations, and the trial court found that testimony credible. We conclude the trial court did not err in denying the motion to suppress.

1

Officer Herring was "working selective traffic enforcement program for DWI" in The Woodlands. He heard a vehicle "revving its engine quite loudly coming towards [an] intersection." The driver stopped at a "four-way stop sign." Turning eastbound, he "accelerated rapidly enough to lose traction on the rear-end of his vehicle and then proceeded at a very rapid rate eastbound on Timberloch in a 30 mile-an-hour zone." Hausherr's car was "fish-tailing." Herring was concerned that the driver would not be able to control the vehicle. There were no other vehicles at that point on the roadway, and there were no pedestrians near the vehicle. Herring explained, however, that there are several apartment complexes in the area, several businesses including "pubs and eating establishments" open late at night, and an extensive amount of foot traffic and vehicle traffic "until about 2:30, 3:00 in the morning."

Herring testified that "as soon as I saw him fishtailing and heading eastbound, I turned on my emergency lights and proceeded . . . on Timberloch trying to catch up to him." The officer explained he was "not able to get [a] lock on the radar, but obviously [the driver] was doing well above the posted [speed limit] on Timberloch and also on Woodloch Forest." Although he is trained to visually estimate a vehicle's speed, in this case Herring was unable to make a specific

estimate, because Hausherr, the driver, "was accelerating very rapidly[.]" Herring explained that Hausherr's speed was not reasonable and prudent, and the speed, being "way above 35," was unsafe. There were vehicles at other intersections during his pursuit of Hausherr. The officer testified that Hausherr "failed to signal a right turn onto Water Way [A]venue from Woodlands Parkway." When asked what traffic code violations Hausherr committed, Herring testified Hausherr failed to maintain control of his vehicle and was doing well above the posted speed limit. Herring also stated Hausherr made an unsafe start from a stopped position.

THE STANDARD

An officer may make a traffic stop based on the officer's observation of a traffic offense. *See Arizona v. Johnson*, 555 U.S. 323, 331, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) ("[I]n a lawful traffic stop, '[t]here is probable cause to believe that the driver has committed a minor vehicular offense . . . .'"); *Garcia v. State*, 827 S.W.2d 937, 944-45 (Tex. Crim. App. 1992); *Dillard v. State*, 550 S.W.2d 45, 50 (Tex. Crim. App. 1977) ("The traffic violation authorized the initial stop."); *see also* Tex. Transp. Code Ann. § 543.001 (West 2011). To conduct an investigative detention of a motorist, an officer must have reasonable suspicion of criminal activity. *See United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). In *Hamal*,

3

the Court of Criminal Appeals stated that "[t]o conduct a traffic stop in compliance with the Fourth Amendment, an officer must have 'reasonable suspicion.'" *Id.* (footnote omitted). The Court of Criminal Appeals has explained that "[r]easonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *see also Foster v. State*, 326 S.W.3d 609, 613-14 (Tex. Crim. App. 2010) (some minimal level of objective justification). Whether reasonable suspicion existed here is a mixed question of law and fact subject to de novo review. *See Hamal*, 390 S.W.3d at 306.

ANALYSIS

Hausherr asserts that the officer's explanation for the basis of the stop was conclusory, and his statements did not provide specific facts to support reasonable suspicion that a traffic code violation had occurred. Hausherr argues Herring failed to articulate with specificity in what way Hausherr's turn onto Timberloch was unsafe, given the conditions present.

Hausherr relies on *Ford v. State*, where the Court of Criminal Appeals held that the officer did not have reasonable suspicion. *Ford v. State*, 158 S.W.3d 488,

4

494 (Tex. Crim. App. 2005). The officer testified, without elaboration, that Ford was following another vehicle too closely. *Id.* at 491, 493. In that case, there was "an absence of any facts allowing an appellate court to determine the circumstances upon which [the officer] could reasonably conclude that Ford actually was, had been, or soon would have been engaged in criminal activity." *Id.* at 493. Hausherr argues that because Herring did not verify Hausherr's speed with a radar gun, he could not tell if Hausherr was speeding, and Herring did not otherwise testify to facts sufficiently specific to warrant a finding of reasonable suspicion.

The record does not support that conclusion. Herring testified to specific facts regarding the observed traffic code violation of unsafe speed by Hausherr. *See* Tex. Transp. Code Ann. § 545.351. Herring explained that Hausherr was accelerating so fast that Herring could not give a precise estimate of the speed, although he was trained to visually estimate speed. Herring testified that Hausherr was driving well above the posted limit, that Herring was going way above 35, and that Hausherr's speed in an area containing apartment complexes, businesses, pubs, and pedestrian traffic was not reasonable and prudent under the existing circumstances. *See generally Dillard*, 550 S.W.2d at 53 (op. on reh'g) ("We

5

disagree with appellants' contention that unless [the officer] knew the exact speed which the automobile was traveling, no violation occurred.").

Hausherr argues that once Herring concluded he had reasonable suspicion to stop based on the "fish-tailing," the alleged speeding violation could not then be considered as a factor in evaluating reasonable suspicion. Hausherr suggests that the officer's show of authority through the activation of emergency lights and the siren meant the detention had already occurred.

"[A]n investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave." *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010); *Johnson v. State*, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995); *see also California v. Hodari*, 499 U.S. 621, 625-26, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). When he was speeding, Hausherr had not yielded to the officer's show of authority. *See Crain*, 315 S.W.3d at 49, 52 (citing *Hudson v. State*, 247 S.W.3d 780, 785 (Tex. App.—Amarillo 2008, no pet.)) ("[W]hen a person pulls over 'in response to a patrol car's emergency lights rather than of his own accord, an investigatory detention has occurred . . . [,]' and the officer must have reasonable suspicion if the stop is to be legal under the Fourth Amendment.").

Relying on federal cases, Hausherr contends that an officer's reasonable yet incorrect presumption that a traffic violation occurred will not provide a justifiable basis for a detention. *See United States v. Raney*, 633 F.3d 385, 390, 393 (5th Cir. 2011); *United States v. Lopez-Valdez*, 178 F.3d 282, 288-89 (5th Cir. 1999). Hausherr also relies on *Hernandez v. State*, 983 S.W.2d 867, 870-72 (Tex. App.— Austin 1998, pet. ref'd), where the Third Court of Appeals found there was no reasonable suspicion based on the officer's observations of a driver's weaving outside of the lane, because there was no evidence the movement was unsafe. But Herring testified in this case to the facts regarding the unsafe nature of the speeding along city streets. The trial court found the testimony credible.

Section 545.351(a) provides that "[a]n operator may not drive at a speed greater than is reasonable and prudent under the circumstances then existing." *Id*. § 545.351(a). The record supports the trial court's findings and conclusion. The specific facts recited by Herring justify the traffic stop. *See Dillard*, 550 S.W.2d at 51 ("The trial court had sufficient evidence to conclude that there was a violation of the traffic law and did not err in admitting the evidence subsequently found."). We overrule Hausherr's issue. The trial court's judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on March 22, 2013
Opinion Delivered April 17, 2013
Publish

Before Gaultney, Kreger, and Horton, JJ.