COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JOSEPH NIZAR AL-HANNA, | § | |
| | | No. 08-17-00037-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Criminal Court No. 1 |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20150C05817) |
| | § | |

## O P I N I O N

Joseph Nizar Al-Hanna pleaded guilty to driving while intoxicated (DWI) with a blood alcohol concentration (BAC) in excess of 0.15.  Al-Hanna preserved his right to appeal matters raised by motion filed before entering his plea.  Al-Hanna raises one issue on appeal, contending that law enforcement lacked reasonable suspicion to conduct the traffic stop at issue, that his warrantless arrest did not occur pursuant to sufficient probable cause, and that the trial court erred in denying his motion to suppress evidence.  We affirm.

### BACKGROUND

Officer Miguel Acuña, a twelve-year veteran of the El Paso Police Department, testified to the following during a suppression hearing: around midnight on June 25, 2015, Officer Acuña was driving in his patrol vehicle with another officer on Mesa Street in El Paso, Texas when he saw a

vehicle "going a little faster than . . . the posted limit of 30 [miles per hour]," which then revved its engine as it travelled through an intersection. Based on his perceptions, Officer Acuña estimated the vehicle's speed as approximately 40 to 45 miles per hour, while his own speed was approximately 35 or 40 miles per hour. Officer Acuña claimed that he was able to keep an eye on the vehicle while scanning for other vehicles in the area in the patrol vehicle's mirrors. After further observing the vehicle, Officer Acuña concluded the driver's actions were "reckless" and "unsafe" and he initiated a traffic stop for a speed violation. After he activated his emergency lights, the vehicle stopped approximately eight seconds later when it entered the driveway of a nearby residence.

The driver of the vehicle, later identified as Al-Hanna, immediately exited the vehicle and began to walk away from the officers and toward the entrance of the residence, which he told Officer Acuña was his home. Al-Hanna began calling for his parents and told the officers that he did not want to stay and meet with them. Officer Acuña noticed that Al-Hanna's speech was slurred, his eyes were bloodshot, and that the smell of alcohol was emanating from his person. Officer Acuña also noted that Al-Hanna was "very excited[,] . . . just wanted to go home[, and] was calling for his parents," who eventually came out of the house. Officer Acuña could not recall whether the other officer knocked on the door of the house, or whether Al-Hanna's parents came out on their own. Eventually, Officer Acuña handcuffed Al-Hanna and placed him in the patrol vehicle due to his "belligerent" behavior and his refusal to obey their commands, and to ensure that nobody would be injured. Realizing that Al-Hanna was not listening to his commands and concluding that further investigation at the scene would be difficult due to the presence of several family members, Officer Acuña transported Al-Hanna to the local police station to

2

continue the DWI investigation. While driving to the station, Al-Hanna voluntarily told Officer Acuña that his uncle was a lawyer and that his uncle "was going to take care of it," and that he had cameras at the house which he claimed would exonerate him.

In addition to Officer Acuna's testimony, Officer Arturo Senclair also testified at the suppression hearing that when Al-Hanna arrived at the police station, he also noted that Al-Hanna's eyes were bloodshot and his speech was slurred. Officer Senclair read Al-Hanna *Miranda* warnings and asked him to perform field sobriety tests, but he refused. Al-Hanna did consent to give specimens of his breath, which yielded BACs of .189 and .186. Al-Hanna was subsequently arrested for DWI.

By information, the State charged Al-Hanna with DWI with a blood alcohol content (BAC) in excess of 0.15. Al-Hanna filed a pretrial motion to suppress the evidence collected pursuant to the stop and his subsequent arrest. Following the foregoing testimony by the officers at the suppression hearing, Al-Hanna argued that it was not reasonable to believe that Officer Acuña could have accurately estimated Al-Hanna's speed while he was simultaneously checking for other vehicles in the vicinity. Al-Hanna also pointed to the fact that Officer Acuña's report, which stated that Al-Hanna had tried to run toward the door, was not borne out by the patrol vehicle's dashcam video. He also argued that Officer Acuña should have felt safe enough to conduct field sobriety tests at the scene because Al-Hanna's family was cooperative and would not have interfered with the investigation.

The State countered that reasonable suspicion to stop Al-Hanna existed because he was driving recklessly in a residential area late at night, Officer Acuña had sufficient experience to accurately determine a vehicle's speed, and Al-Hanna did not stop immediately after Officer

3

Acuña activated his emergency lights. The State also argued that the dashcam video confirmed Officer Acuña's testimony that Al-Hanna had attempted to get away from the officers by walking toward the front door of his house. The State further contended that it was reasonable to conduct the field sobriety tests at the police station because it was likely that Al-Hanna's parents would have interfered with the investigation, and that they would not likely stand idly by if the officers had performed these tests in their presence. Following the suppression hearing, the trial court denied Al-Hanna's motion to suppress. In its findings of fact and conclusions of law, the trial court noted that Officer Acuña was a twelve-year veteran of the El Paso Police Department and that he had observed Al-Hanna's vehicle revving its engine and traveling ten miles per hour over the designated speed limit. The trial court also concluded that "[t]he observations made of [Al-Hanna] justified the continued detention and transportation of [Al-Hanna] to the [police station] for further investigation of a possible DWI[,]" and that based on their observations of Al-Hanna's behavior, the officers had probable cause to arrest Al-Hanna for DWI.

Al-Hanna subsequently pleaded guilty to the offense and received one year of community supervision as punishment. This appeal follows.

## DISCUSSION

In his sole issue, Al-Hanna challenges the trial court's denial of the motion to suppress arguing that the trial court should have granted the motion because (1) the officers did not have reasonable suspicion to stop him, and (2) he was illegally arrested at the scene without a warrant or probable cause. We address these matters separately.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated

4

standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and it may accept or reject all or any part of the witness's testimony. *Thomas v. State*, No. 08-05-00247-CR, 2007 WL 1404425, at *1 (Tex. App.—El Paso May 10, 2007, pet. ref'd) (not designated for publication) (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)). Under this standard, we give almost total deference to the trial court's determination of questions of historical fact which are supported by the record, as well as mixed questions of law and fact turning on the credibility and demeanor of witnesses. *Amador*, 221 S.W.3d at 673. We review *de novo* those mixed questions of law and fact not turning on witnesses' credibility and demeanor. *Id.* We may uphold the trial court's ruling under any applicable theory of law, even if the trial court did rely on that theory in coming to its decision. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

**Reasonable Suspicion**

An officer is justified in conducting a traffic stop if he has reasonable suspicion to believe that the driver is committing an offense, including a traffic offense. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Id.* Whether an officer has reasonable suspicion to conduct a traffic stop is an objective standard which disregards any subjective intent of the officer making the stop, and instead looks solely to whether an objective basis for the stop exists under the totality of the circumstances. *Id.* at 492–93. To suppress evidence on an alleged Fourth Amendment violation,

5

the defendant bears the burden of producing evidence that rebuts the presumption of proper police conduct; the defendant satisfies this burden by showing that the search or seizure occurred without a warrant. *Id*. at 492. Once this occurs, the burden shifts to the State to prove the warrantless search or seizure was reasonable. *Id*. Thus, the State bore the burden in this case to establish that the warrantless seizure of Al-Hanna was reasonable. *See id*.

Under the Texas Transportation Code, a person commits a traffic offense if he drives at a speed greater than is reasonable and prudent under the circumstances. TEX. TRANSP. CODE ANN. § 545.351(a). A speed in excess of the limits established by Section 545.352(b) is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful. *Id*. § 545.352(a). It is undisputed that Al-Hanna was observed and later stopped while driving on a residential street which was subject to a speed limit of 30 miles per hour; thus, if Al-Hanna was traveling in excess of that speed, doing so is prima facie evidence that the speed was unlawful. *See id*. § 545.352(b)(1). Likewise, a person commits reckless driving "if the person drives a vehicle in willful or wanton disregard for the safety of persons or property." *Id*. § 545.401(a).

Speeding is an example of a traffic violation which is determined subjectively, and an officer's opinion that a motorist committed a violation, without supporting objective proof, is insufficient to establish reasonable suspicion or probable cause. *Castro v. State,* 227 S.W.3d 737, 742 (Tex. Crim. App. 2007) (an officer's opinion on whether a driver was committing a traffic offense is "not an effective substitute for specific, articulable facts in a reasonable-suspicion analysis when the nature of the offense requires an officer to make a subjective determination[,]" including when the suspected traffic offense is speeding) (citing *Ford*, 158 S.W.3d at 493). This stands in contrast to a traffic offense such as failure to signal a lane change, which is an offense

6

which is objectively reasonable and can be established without a detailed account of the officer's observations. *Id.* Although the Court of Criminal Appeals did not state in *Castro* whether reckless driving is an offense to be determined by objective or subjective perceptions by the officer, we believe it falls within the latter category because whether a person is driving recklessly is a subjective opinion, and the offense cannot be determined by an objective measure. *See id.*; *see also* TEX. TRANSP. CODE ANN. § 545.401(a) ("[a] person commits [reckless driving] if the person drives a vehicle in willful or wanton disregard for the safety of persons or property").

In this case, Officer Acuña testified at the suppression hearing that he had previously seen speeding cars before, that he can determine whether a car is speeding by "get[ting] [an] approximate speed[,]" that he is certified and trained to use radar to detect speeding vehicles, and that he had previously used radar detectors on the highway for over six years. Officer Acuña stated that he initially noticed Al-Hanna when he revved his vehicle's engine. Officer Acuña estimated that Al-Hanna was traveling at approximately 40 to 45 miles per hour in an area with a posted speed limit of 30 miles per hour, and that he based these perceptions on his experience in estimating the speed of moving vehicles, as well as the relative speed of his own vehicle. Nevertheless, Officer Acuña admitted on cross-examination that he did not recall the speed his vehicle was traveling at when he estimated Al-Hanna's speed. Officer Acuña testified that he conducted the traffic stop based on his belief that Al-Hanna was committing a traffic violation by speeding, and agreed with the prosecutor that Al-Hanna was driving in a reckless manner.

On appeal, Al-Hanna contends that Officer Acuña's articulated reasons for conducting the traffic stop were "patently conclusory," and his testimony did not establish specific facts to support reasonable suspicion that a traffic violation had occurred because his estimation of Al-Hanna's

7

speed was based on guesswork. Al-Hanna cites *Ford*, 158 S.W.3d at 494, for the proposition that an officer's conclusory statements, without more, cannot support reasonable suspicion to justify a traffic stop. In *Ford*, an officer stopped the defendant based on his belief that the defendant was "following too close," without giving further explanation for why he conducted the traffic stop. *Id*. at 491, 493. The Court of Criminal Appeals held that the officer did not present sufficient articulable facts to justify the detention, reasoning that the officer's conclusory statement, without more, could not allow the trial court to assess whether the officer's opinion was objectively reasonable. *Id*. at 493. The Court also noted that while training and experience in evaluating a vehicle's speed can play a part in the reasonable-suspicion analysis, an officer's reliance on his training and his subjective opinion that a driver committed a traffic offense, without objective factual support, are insufficient to establish reasonable suspicion. *Id*. at 494; *see also United States v. Cortez*, 449 U.S. 411, 419, 101 S.Ct. 690, 695–96, 66 L.Ed.2d 621 (1981) (stating that although "objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion[,]" reliance on special training cannot establish reasonable suspicion without objective factual support).

We disagree with Al-Hanna's contentions that Officer Acuña's testimony was too conclusory to satisfy the test established in *Ford*, and that his testimony did not establish specific and articulable facts sufficient to establish reasonable suspicion. During the suppression hearing, the State presented Officer Acuña's testimony that (1) based on his perception of Al-Hanna's vehicle's speed, as well as his own vehicle's speed and his training and experience (including six years of observing speeding vehicles while using a radar gun on the highway), he estimated Al-

8

Hanna was traveling 40 to 45 miles per hour in an area with a posted speed limit of 30 miles per hour; (2) because of the manner in which Al-Hanna entered the intersection and "revved" his engine, Al-Hanna was driving recklessly; and (3) the dashcam footage which showed Al-Hanna's vehicle traveling through the intersection. While this evidence may not have established that Al-Hanna was speeding or driving recklessly beyond a reasonable doubt, an officer does not need to meet that burden of proof to have reasonable suspicion to conduct a traffic stop. *See Ford*, 158 S.W.3d at 492 (an officer only needs a reasonable basis to conduct a traffic stop, and is not required to prove the commission of a traffic offense beyond a reasonable doubt). Instead, these are specific and articulable facts which show that an objective officer would have reasonable suspicion that, under the totality of the circumstances, Al-Hanna was speeding or driving recklessly in the officer's presence.

Likewise, the facts established during the suppression hearing, such as the estimated speed at which Al-Hanna was traveling and the description of the area in which he was driving, constituted "specific facts rather than the type of bare conclusions which will not suffice under *Ford*." *See Tuong Du v. State*, No. 13-16-00188-CR, 2017 WL 227859, at *4 (Tex. App.—Corpus Christi Jan. 19, 2017, no pet.) (mem. op., not designated for publication); *see also Hausherr v. State*, 404 S.W.3d 669, 671 (Tex. App.—Beaumont 2013, no pet.) (officer who was trained to visually estimate speed had reasonable suspicion to stop driver where, based on his perceptions, the officer observed the driver traveling above the posted speed limit in an area with apartment complexes, businesses, pubs, and pedestrian traffic, which was not reasonable and prudent under the circumstances). Officer Acuña's observations were relayed in terms of the facts which make up the offense of speeding, rather than a bare conclusory statement overlaying the

9

offense which is impermissible under *Ford*. *See Tuong Du*, 2017 WL 227859, at \*4 (citing *Dillard v. State*, 550 S.W.2d 45, 53 (Tex. Crim. App. 1977) (op. on reh'g); *Gutierrez v. State*, 327 S.W.3d 257, 263 (Tex. App.—San Antonio 2010, no pet.); *McAfee v. State*, 204 S.W.3d 868, 870 (Tex. App.—Corpus Christi 2006, pet. ref'd); *Icke v. State*, 36 S.W.3d 913, 915–16 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd)); *see also Hausherr*, 404 S.W.3d at 671 (rejecting driver's contention that officer did not have sufficiently specific facts under *Ford* to constitute reasonable suspicion to stop the driver because the officer did not verify the driver's speed with a radar gun). As such, we conclude that Officer Acuña's testimony does not run afoul of the prohibition of conclusory testimony promulgated in *Ford*. *See Tuong Du*, 2017 WL 227859, at \*4; *Ford*, 158 S.W.3d at 493–94; *see also Hausherr*, 404 S.W.3d at 671 (officer relayed sufficiently specific facts to warrant a finding of reasonable suspicion under *Ford* where he testified that he was trained to visually estimate speed, that the driver was traveling over the posted speed limit in an area containing apartment complexes and pedestrian traffic).

In sum, Officer Acuña's testimony supports the trial court's finding that he observed Al-Hanna's vehicle traveling at least 10 miles per hour over the posted limit. His testimony established specific and articulable facts which, combined with his testimony regarding his training and experience in detecting speeding vehicles, are sufficient to support the trial court's conclusion that Officer Acuña had formed a reasonable suspicion to initiate a traffic stop of Al-Hanna's vehicle for a speeding violation. *See Dillard*, 550 S.W.2d at 53 (an officer does not need to know the exact speed at which the defendant was driving to establish reasonable suspicion to conduct a traffic stop for a speeding violation); *Tuong Du*, 2017 WL 227859, \*4 (reasonable suspicion existed where the officer conducting a traffic stop for speeding testified that he had seven years'

10

experience in gauging speed and verifying it using his radar, that he had developed the ability to accurately assess a driver's speed by sight, and that he determined the defendant's speed based on his training and experience and by comparing its speed to the speed of other vehicles in the area); *Hausherr*, 404 S.W.3d at 671 (officer who was trained to visually estimate speed had reasonable suspicion to stop driver where the officer observed the driver traveling above the posted speed limit in an area with apartment complexes, businesses, pubs, and pedestrian traffic, which was not reasonable and prudent under the circumstances).

Giving deference to the trial court's factual determination that Officer Acuña saw what he claimed to see, we conclude that the record supports the trial court's conclusion that he articulated a reasonable suspicion to conduct a traffic stop for a suspected speeding violation.

**Probable Cause**

Having determined that Officer Acuña had reasonable suspicion to stop Al-Hanna, we now address Al-Hanna's argument that he was arrested without supporting probable cause, and that the Intoxylyzer results should have been suppressed by the trial court. Interactions between police and civilians are divided into three categories: encounters, investigative detentions, and arrests. *State v. Larue*, 28 S.W.3d 549, 553 n. 8 (Tex. Crim. App. 2000). "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). "The 'reasonable person' standard presupposes an *innocent* person." *Id.* (citing *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (emphasis in original)). We apply the standard on an *ad hoc*, case-by-case basis, looking only at the

11

objective factors surrounding the person's detention. *Roberts v. State*, Nos. 07-15-00282-CR, 07-15-00283-CR, 2017 WL 2823777, at *5 (Tex. App.—Amarillo June 28, 2017, no pet.) (mem. op., not designated for publication) (citing *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012)).

Whether a person is under custodial arrest or subject to an investigative detention is a matter of degree and depends upon the length of the detention, the amount of force employed, the officer's opinion, and whether the officer actually conducts an investigation. *Mahlow v. State*, No. 01-14-00753-CR, 2016 WL 888715, at *3 (Tex. App.—Houston [1st Dist.] Mar. 8, 2016, pet. ref'd) (mem. op., not designated for publication); *Woods v. State*, 970 S.W.2d 770, 775 (Tex. App.—Austin 1998, pet. ref'd). Additional factors we consider in determining whether a person is under custodial arrest or subject to an investigative detention include the nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, and the reaction of the suspect. *Cano v. State*, No. 03-15-00485-CR, 2017 WL 3908640, at *8 (Tex. App.—Austin Aug. 24, 2017, pet. ref'd) (mem. op., not designated for publication). "[C]ommon sense and ordinary human experience must govern over rigid criteria" when it comes to determining the issue of custody. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997). Further, given that allowances "must be made for the fact that officers must often make quick decisions under tense, uncertain and rapidly changing circumstances[,]" there may be instances in an investigative detention that reasonably justify an officer handcuffing a suspect, placing a suspect in a police car, or transporting the suspect to another location for questioning. *Id.*; *see also Roberts*, 2017 WL 2823777, at *2, 6–7 (driver under suspicion for intoxication manslaughter was not under custodial arrest where she was handcuffed, placed in the backseat of a patrol vehicle,

12

and questioned away from the scene of the initial encounter because the vehicular accident scene was chaotic and the driver was heavily intoxicated and exhibiting belligerent behavior at the time of the encounter with law enforcement). As such, handcuffing a person and transporting him or her to another location to continue the investigation does not automatically convert an investigative detention into a custodial arrest. *See Roberts*, 2017 WL 2823777, at *6 (citing *Ortiz*, 382 S.W.3d at 374).

Here, Al-Hanna argues that the encounter between him and law enforcement escalated from an investigative detention to a custodial arrest when officers handcuffed him, placed him in a patrol vehicle, transported him to the police station, and detained him in a holding cell. We disagree.

Concerning the officer's opinion, the amount of force employed, and the reaction of the suspect, Officer Acuña testified during the suppression hearing that Al-Hanna exited his vehicle after parking in the residence's driveway and refused to speak with him or obey his commands, instead expressing his desire to speak with his parents, who had exited the residence at that point. Al-Hanna's "belligerent" behavior continued, and so Officer Acuña handcuffed Al-Hanna and placed him in the squad car "to make sure nobody got hurt." Officer Acuña testified that he told Al-Hanna's parents that he was handcuffed to make sure nobody got hurt and the parents were very understanding. Soon, other members of Al-Hanna's family arrived. Officer Acuña testified Al-Hanna was not listening to the officers' requests while others were present, and thus, he became more concerned with the safety of the situation and Al-Hanna's level of cooperation. Given these circumstances, we find the record supports the officer's testimony that it was reasonable to handcuff and transport Al-Hanna to a place more conducive to a safe investigation. *See Roberts*,

13

2017 WL 2823777, at \*2, 6–7; *Mahlow*, 2016 WL 888715, at \*4; *see also Rhodes*, 945 S.W.2d at 118 (handcuffing a person does not automatically convert an investigative detention into a custodial arrest). Further, the record shows that (1) the stop occurred late at night, (2) Al-Hanna was being investigated for DWI, and (3) Officer Acuña detected signs of intoxication in Al-Hanna; these factors also support the conclusion that Al-Hanna was reasonably detained at the scene then transported to the police station to complete the investigation. *See Roberts*, 2017 WL 2823777, at \*2, 6–7; *Mahlow*, 2016 WL 888715, at \*4.

We also consider the length of the detention. *See Mahlow*, 2016 WL 888715, at \*4. The patrol vehicle's dashcam video shows that officers detained Al-Hanna for approximately ten minutes at the residence, and that he was transported from the scene of the initial encounter to the police station for an additional twenty minutes. Once there, Officer Acuña and his partner briefly met with Officer Senclair to discuss the investigation up to that point. Officer Senclair then met with Al-Hanna and asked him if he would perform standardized field sobriety tasks, which Al-Hanna declined. Officer Senclair then read Al-Hanna the *Miranda* warnings and the statutory warning, and Al-Hanna agreed to the officer's request to provide a breath sample. Thus, the record suggests that the investigation was carried out in an efficient manner, and under the circumstances Al-Hanna was not detained longer than necessary to determine whether he had committed an offense. *See id.* (suspect was subjected to investigative detention where period between initial stop, the suspect's transportation to the police station, and the administration of a breath test lasted less than an hour and a half); *Castro v. State*, 373 S.W.3d 159, 165 (Tex. App.— San Antonio 2012, no pet.) ("[a] detention's duration must demonstrate the officers efficiently pursued an investigation to confirm or dispel their suspicions").

14

Based on the foregoing, we conclude that Al-Hanna's seizure was not a custodial arrest, but rather an investigative detention carried out for the purpose of reasonably continuing the DWI investigation at the police station. Therefore, the trial court did not err in denying Al-Hanna's motion to suppress the Intoxylyzer results. *See Roberts*, 2017 WL 2823777, at *2, 6–7; *Mahlow*, 2016 WL 888715, at *4.

Even if Al-Hanna was under custodial arrest when he was detained by law enforcement, we find that Officer Acuña nonetheless had probable cause to arrest him for DWI. Probable cause to effect a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the person arrested had committed or was committing an offense. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Like the test for reasonable suspicion, the test for probable cause is an objective one, in which we do not consider the subjective beliefs of the arresting officer which is made under the totality of the circumstances. *Id*. Probable cause requires more than a mere suspicion, but less than needed to support a conviction. *Id*. While traffic violations alone are not sufficient to establish probable cause for DWI, we consider the totality of the circumstances in determining whether probable cause exists. *Nava v. State*, No. 08-11-00127-CR, 2012 WL 3364230, at *3 (Tex. App.—El Paso Aug. 15, 2012, no pet.) (not designated for publication) (citing *Illinois v. Gates*, 462 U.S. 213, 283, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Here, Officer Acuña testified that he observed Al-Hanna exit his vehicle after driving on a public street and pulling over in the driveway of his residence, and he thereafter refused to obey Officer Acuña's commands or to participate in field sobriety tasks. Officer Acuña also testified

15

that he detected the odor of alcohol emanating from Al-Hanna's person, and noted that Al-Hanna exhibited slurred speech and bloodshot eyes, which are classic signs that a person's mental and physical faculties might be impaired. *See Markey v. State*, 996 S.W.2d 226, 230 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Thus, having observed Al-Hanna driving in a public place and exhibiting signs of intoxication and impairment, Officer Acuña was aware of specific facts which, under the totality of the circumstances, were sufficient to lead a prudent person in believing that Al-Hanna had been driving his vehicle while intoxicated.

As such, even if Al-Hanna was under custodial arrest when he was detained by law enforcement, such arrest was supported by probable cause, and the trial court did not err in denying Al-Hanna's motion to suppress. *See, e.g., State v. Garrett*, 22 S.W.3d 650, 654–55 (Tex. App.—Austin 2000, no pet.) (trial court erred in granting driver's motion to suppress because officer had probable cause to conduct warrantless arrest of driver suspected of DWI where the driver exhibited unlawful driving behavior, smelled strongly of alcohol, had watery eyes, was unsteady on his feet, and refused to participate in field sobriety tests); *Markey*, 996 S.W.2d at 230. Al-Hanna's sole issue is overruled.

## CONCLUSION

Having overruled Al-Hanna's sole issue, we affirm the judgment of the trial court.

GINA M. PALAFOX, Justice

January 10, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

16